wrapping up is the afternoon in-bank panel. We have two cases on the docket for argument, but due to weather conditions with the fog last night, the second case we have, we're going to end up doing a Zoom because the lawyers couldn't fly into here. So we're glad to have you in person. So we'll hear Greer and then when we finish Greer, we'll just recess to 3-4-8, United States v. Greer. Mr. Page. Thank you, Mayor. Please, the court. My name is Kevin Joel Page. I represent Desmond Howard Greer. I hope to leave the court with two points today. The first of them is that while the district court believed that it was sentencing within the guidelines and indeed believed that it was imposing the only sentence that would fall within the guidelines of 120 months, it in fact sentenced 33 months above the high end of the applicable range and 50 months above the low end of that range. That's a point of agreement between the parties in this case, but even if this court were disinclined to accept the government's concession as to one of the defendant's putative crimes of violence, the guideline range could not be more than 84 to 105 months, requiring a variance of 15 months to get to the sentence imposed. The second point I hope to leave the court with today is that this court has never simply assumed that a district court that is sentencing within the guidelines as it understands them to be would have varied to the sentence imposed. It has in some cases accepted a clear, plain statement by the district court that it would have imposed the same sentence under different guidelines, but it's never put those words in a district court's mouth, and that would be, I submit, a particularly striking path for the court to take in this case. Your argument takes us to the point, I think, that you're asking the district court if they're going to actually make the statement, I would impose this sentence regardless. Many of the district judges are doing that routinely. It's almost a boilerplate. That's one alternative. Judge Lynn here, as typical of Judge Lynn, is very, very, that is about as plain as that detailed explanation I've seen in a while at sentencing. She makes very clear what she thought, and she sentenced to what she did. The question is, are we going to insist that she also have said, or do we have to, or do we infer from what the detailed character of what she did that she was sentencing by the guidelines? I think that there are, in this particular case, we would require, the court should require more than merely the statements that she made on the record that the crime is very serious, and I'm not inclined to give you mercy, and the things that distinguish this particular case and require a clear and plain statement are, number one, that she sentenced within the guidelines as she thought them to be, number two, that she would have to vary so substantially from the guidelines in order to reach the same sentence, and number three, that the error is preserved, which means that we have a high hurdle, a convincing, a while this court has, in some cases, accepted a plain statement, and it has, for instance, Halverson found harmlessness without a statement that was quite so clear, it's never done so under facts that are anything like the ones in this case. Where the district court may have said, I would have done the same thing, those have been in situations where clearly you could discern that the district court had the correct guidelines in front, right? That's right, right, so that's one higher standard, I mean, excuse me, that's the lower standard that this court will apply when the court has both guidelines in front of them and makes a clear statement. It's described a more demanding standard in Ibarra-Luna in cases where that nobody presents or the court doesn't explicitly consider the lesser guideline range, and so if it requires a clear and plain statement in cases, in the cases arising from the lesser standard, it would be unusual if it would affirm without that clear plain statement from the district court in a case like this, and I would suggest to the court that if it is in doubt about the matter in this case, Mr. Greer, I, on behalf of Mr. Greer, have no objection to a limited remand to simply ask the district court whether it would have imposed a lesser standard. It would be, I think, unfair to . . . What would be the advantage of a limited remand for her to tell us what she would have done as opposed to remanding it back? If we were of a mind that it's not harmless, you know, remanding it back for the resentence in light of Borden, in light of everything, I mean, what's the advantage? I mean, you're still stuck with what is in the transcript. The advantage would be at the expense of moving the client to the court. I'm not suggesting that Mr. Greer doesn't have a right to that. I'm simply stating I don't have any objection to that and that it would be particularly unfair to Mr. Greer for him to preserve error and then have no remedy in a 2255 or if, in fact, the sentence would have been lower to affirm in spite of . . . Well, as I read her transcript of the transcript of her dialogue with the defendant, she was aware of the counsel, I should say, of the Borden issue as being an open question and yet to be resolved. She had a sort of parenthetical comment in her dialogue to that. You know, she was keenly aware of this issue when she posed it, so that was a possibility. And I think that makes the absence of any effort to inoculate or disclaim the guidelines or inoculate the sentence all the more striking is that she knows that she's in an area . . . she has an objection presented to her and she knows that she's in an area where the law evolves or there's still nothing in the way of a hypothetical sentence or any way to address the hypothetical possibility of a different guideline range. And what I want to say, one thing about the comments that the district court made here is that although they are very stern and they're very thorough, they wouldn't have been out of place if she were giving a sentence of 87 months. They certainly wouldn't have been out of place if she were giving a sentence of 105 months. Nothing about the things that she's saying about the defendant's conduct in that case would strike us as odd if they had preceded another very severe sentence of 105 or 84 or 87 months in that case. And that, I think, is really different from, for instance, the case of Self, which the government relies on where the court said, you know, I think the guidelines don't give . . . don't take enough account of this. Something like, I wish that the sentence were higher and it isn't. So, for that reason, I think that the government has not succeeded in meeting its heavy burden to show harmless error in this case. The court has no other questions. Is it enough when the district court said in the hearing that her view is that a sentence of 120 months is the appropriate sentence? Is that definitive enough? I don't think it is because it's made within the context of a guideline range that says 120 months is the guideline range. In fact, if we look at page 117 in particular, she says the court is going to sentence you to the guideline in this case, which is 120 months. So, if she had said it's going to sentence you to the statutory maximum in this case at 120 months, we have a little bit of a closer case. She's recognizing . . . she's calling 120 months the guidelines and not the statutory maximum, suggesting that it has some significance at least. Thank you. All right. We'll hear from Mr. McKay. Thank you, Your Honors. May it please the court, Brian McKay on behalf of the United States. I'd like to start with Judge Wilson, your point about what the court said. Judge Lynn did say I'm imposing for all of these reasons, all of these reasons having nothing to do with the guideline range, I'm going to impose what she characterized as the guideline sentence, 120 months. I would submit to the court that that has very little probative value of the judge's intent at that point because 120 months was synonymous with the statutory maximum. I'll point the court to Raina Aragon, where earlier this year a district court, this court, reviewing a district court's statements that even more concretely went into how the selected sentence went in to fit in the range there. Even there, the court didn't just say, well, the court said guideline range so we find it must have influenced the court. Instead, the court stepped back and looked at the entirety of the district judge's comments and said, no, what that was was simply a statement of observation. The court was observing. It's in the guideline range, but . . . But the court, I mean, the court here didn't say anything about the statutory maximum. Granted, she went through a bunch of factors. She went through the seriousness of the crime, but, I mean, counsel pointed this out. She says the court's going to sentence you to the guideline in this case, which is 120 months. If the court was going to impose the statutory maximum, 120 months, why didn't the court say that? What are we to do with it? Certainly. The court also didn't say, well, even if the statutory maximum had been greater, the court said 120 months is sufficient, and I do even point to Mr. Page's argument in his brief that the court didn't stack it onto the pending state sentence, and I think that's proof of the fact that the court said, look, it's not more than 120 months. It is 120 months that I deem sufficient but not greater than necessary. Most of what Judge Lynn . . . I mean, I agree with my colleague to the right of me. Judge Lynn is very astute. She's very detailed and on and on, but most of what's in his transcript, she is ably sized up. This is a bad apple, if there ever was one, in terms of his violent propensities and, you know, all of that stuff. He's mean. He's, what, 5'9", 285 pounds. He's obviously, you know, brutalizing stuff and all of that, but in most of the transcript, she's talking about, you know, the seriousness of what he's done, you know, having the guns, et cetera, et cetera. My point is, when I get to the pages that actually deal with, you know, the sentence, it says clearly he's dangerous to the community, but it says, Judge Wilson just said, she just . . . she says the court is going to sentence to a guideline which is 120 months. I mean, I don't see kind of the analysis of the guideline, you know, et cetera, and then on the other page, she says, but considering all the factors that's set out in the statute, the court is of the view that a sentence of 120 months is the appropriate sentence. So, help me understand how that, just that, I mean, I have no doubt if I could read all this in here and say, well, clearly she would have given him this anyway because he's a bad actor, but that's all we really have in the trail unless I'm missing something in here. Yes, Your Honor. There was no point at which the district court said, look, the guideline range is my starting point or anchors my sentencing. Instead, when it came time to discuss and explain the court's reasons for the sentence, it relied exclusively on independent 3553A factors, and the fact that the court just said in passing, and it's the guideline sentence, so lightly perhaps tethers it, but then again, as Your Honor just pointed out, on page 118, the court then circles back and says, okay, and summarize again, for all of these reasons, the 3553A factors, it's 120 months, and again, did not repeat, and it's the guideline sentence, didn't do that. Here, I would point the court to self, to Rogers, or I'm sorry, to Jones, as another instance, it's other instances where the court didn't make the statement, as Your Honors have noted, that Judge Lynn typically does not do, in saying this is the same sentence. That does not prohibit the court from having the firm and definite conviction, a clarity. It's not the magic words that the court has required. What do you do with Ibarra, Luna, and those cases? They've never been overruled. We do have cases, as Judge Higginbotham pointed out, the district court's well aware of not wanting to get it back, so they'll say, even if I'm wrong about X, I would have given you the same thing. I mean, that's magic. When we get that, it's an easy move on down the road, assuming that it fits all those parameters, but we still have those, I say, old cases, but they're still on the books. Ibarra, Luna, and other cases that aren't overruled by self, it's just that the cases differentiate between, number one, whether the judge has the correct guideline pegged, and then gives a sentence, would have done the same, or like here, you've got this intervention of Borton, but there's no explication about that, and the court just says, I think this is the appropriate guideline, I'm giving you X. So, it just seems that the government is asking us to extrapolate quite a bit in the wake of, you know, these, no, I'm not talking about magic incantation, but most of what's in the transcript, she talks about, you know, how bad an actor he is, and so, you may be right, Ms. Bay may be right, that if she gets this guy back, she'd just say, you know, you're such a bad actor, here it is. But the question is, should we have to infer that from what's here, versus knowing for sure, you know, what the district court would have done? That's just . . . absence of that magic language would be to come dangerously close to elevating it to sort of talismanic incantations that this court, this district court, will not do, I think, by experience. Here, what the court did, again, never said, well, the guideline range is this, and that's my starting point. Instead, when it came time to justify the sentence, it never pointed to the guideline range or the classification of his prior convictions, and I think that that's important. It was important to Self, it was important to Jones, that it never justified its sentence based on that. Instead, what the court did was at least, and I think by my count, maybe seven times circled back over eight pages of transcript to say, this is serious, not because of the guideline range, but because of other 35-53a factors. The court explicitly said so at pages 115 and 116, where it said, quote, I think you're dangerous to the community, and it is principally for this reason that the court is considering a very serious sentence. Well, I mean, nobody's disputing that. I mean, I don't see the dispute that she's got him pegged as a bad actor. He's dangerous in all nine yards. The intervening of Borden said that if the underlying offense involved recklessness, then it can't be counted, all right, so it gets the benefit of Borden, and the recklessness is not there, so, you know, that's the supervening intervention of the law, so are you saying there need be nothing at all, you know, in the transcript other than us reasoning that the district court clearly views the person as dangerous, etc., etc., such that the guideline should be X? I mean, to me, it's the opposite of you saying you don't want a talismanic statement, but is there no, is there nothing? I mean, I'm just reading it. Certainly, and if, for example, the district court had said, and the sentencing commission agrees with me because those family violence assaults, which the court did rely on, but I would point out the court relied on the conduct, never said, and the sentencing commission agrees with me because they view that as serious as well, that was never said. Instead, the court was focused at every turn on his conduct, his conduct in possessing four guns at different times, in threatening a customer who came to discuss a disagreement about the way he did his business, about the threats that he made, about the dangerous . . . So, if we say we read from this that the district court would have given the same sentence, then we would just load up all that she said about the dangerousness, the firearms, and so on and so forth. I mean, the predicate to it would be to say the district court so sized up this defendant is inherently dangerous, on and on and on, it's evident from the transcript that she would have given him, you know, X sentence. Is that what, basically, what you are saying? And I think the court did as much in Martinez-Romero, where even there the court, and I would hearken back to Ibarra Luna, the question is, would the court have imposed the same sentence, and would it have done so for the same reasons, irrespective of the guideline range? And I think the answer is yes, in both instances. In Martinez-Romero, the court said, even there, where I think analogous, similar statements were made, the court said, look, we agreed that the court would have varied there. These statements, the fact that the court went all in on 35, 50 years. Your counsel, if we, the simple thing to do, of course, is simply send it back to the judge and let the judge sentence again, and then she could say, I presume, she could say, I appreciate the permissible, if we did that, and she did that, right? Absolutely. But then the message that comes from this court, then, is perhaps that you must use the magic words. Yes, Your Honor, that's my concern here, is that if the court says, look, the court didn't use the part of the part of the litany of, in this interrogation process, and it's a process, he's pleased and guilty, et cetera, et cetera, there are only 94% of the cases being disposed of that way. It's the law of pleas is what we're dealing with, and it's very important in that administrative sense to have some clarity about that. But if we just weave into that, that the statement that, regardless of anything else, it's a sentence I would impose, I'm not sure that's a, that's, where you want to go with that? Your Honor, the court has explicitly rejected the notion that the court has to do that. In Halverson, it said, what matters is the clarity of intent, and here, there is a clarity of intent, that it was not any other sentence other than the 120 months that the court deemed sufficient but not greater than necessary to the extent that the court deemed sufficient. In Romero, we said, while the court expressed a multitude of reasons for imposing the sentence above the properly calculated range, we can find no indication that the court's decision was independent of the erroneous calculation to call the court's attention to that range in the person. On this record, the government can't satisfy its burden. I mean, that case isn't calling for some talismanic language. It's not. It's just saying, yes, the district court gave a whole range of reasons, and so you could say here, the district court gives a full range of dangerousness, serious, and so forth, but that panel just said there's no independent indication. So, I'm just not following up why that leads to some talismanic language. The court just said, we looked at all these reasons, and yes, they may be there, but there's no independent reason. So, I mean, to me, the flip side is to say, well, I mean, I just see it as a difference between one talismanic language, then our courts just simply say, and district courts do this sentencing all the time, just like they've injected, and I would have given them the same thing. Well, maybe we don't know that, but they say that, and so we accept it on. So, we're this big open door, particularly on a guy like him. You're not trying to make it harder on the district court, but I dare say if the district court had said that, Mr. Page wouldn't be appealing here. Your Honor, I would return to— Did you handle the sentencing? I'm sorry? Did you handle the sentencing? I did not. Okay. I would return to Martinez-Romero, where the court did there say the first sort of aspect of Ibarra-Luna was met. The court would have imposed an above-guideline sentence. What distinguishes Martinez-Romero is the court said, this court said, but the district court's remarks show that it did anchor that one of the things it considered was the guideline range. That's what distinguishes. Here, there is nothing. The court made a passing reference to it being the guideline sentence, but beyond that, that passing reference, which I think is later sort of undermined in part by its reiteration by saying this is the sentence justified by the 3553A, no mention of the guidelines, that whatever minor prohibitive power that passing reference has is overcome by eight pages of statements about the seriousness of his conduct, the seriousness of the assault of offenses against the mother of his children, not their categorization under the guidelines, that here at every turn, what Judge Lynn is pointing to is the seriousness of his actions at multiple times, the dangerousness of the guns, the fact that he could have been charged with more crimes than he wasn't, the fact that he was an ongoing danger to the community. That's what drove the district court's sentencing decision here, not once. But counsel, couldn't you also read the transcript to explain in very laudable detail, very organized detail, all these things you're talking about because the defendant's grandmother is in the room, the defendant's pastor just testified, I guess, there are all these letters and family members who were there, and the defendant has stood up and said, the Lord asked me, I've been praying to the Lord for mercy and that he would lay that on your heart, and so the court's responding as to why there's not going to be mercy. I mean, couldn't you explain the bulk of what you're talking about in that light versus this is the evidence that she was going with 120 regardless of the guideline range? I can't judge for two reasons that are borne out by this record. First of all, I know Mr. Page made that argument, and there are two aspects of this record that rebut that. First, going back to page 101, the district court has settled the, you know, guideline range, talked about, you know, his pleading guilty to an information and taking care of all the housekeeping matters, and then turns to, okay, now it's time to determine the appropriate sentence. And Souspante, before ever hearing a mention of possible leniency, says, look, there are a couple of things I want to note. This involves four guns, and there are instances of family violence. The court is saying, I think the inference from that is the court is saying, let me tell you up front, this is a serious case and this is a serious sentence, so when you're advocating for a sentence, keep that in mind. That's the starting point, not the guideline range. Didn't say, I want to remind you what the guideline range is, now advocate. The second aspect, and I think more forcefully shows it, pages 113 and 114, the court did point to something that rebutted his argument for mercy, and that was the fact that he, while in pretrial detention, had acted very aggressively. She didn't go into great detail. The details are page 160 and 161, but he acted very aggressively while in pretrial detention, and she specifically pointed to that and said, look, that's what I'm relying on to basically say, I don't buy this argument that you've now seen the light, renewed your faith, and become a new man. That's what I'm relying on to rebut that, but the court was very explicit in saying, I want to be clear, I'm not giving you one additional day because of that, and I think what the court was saying is, look, in sort of segmenting or giving you the 120 months, what she's saying is, all this other stuff that I'm pointing to, that's what roots this at 120 months. This little portion that I'm talking about, your pretrial detention behavior, that's what tells me you don't deserve anything less, and so I think with that, the court can be convinced that what Judge Lynn was saying is, it's 120 months. It's 120 months because of all these things that I've been talking about and repeatedly expressing. The fact that she amplified, when the prosecutor argued for the sentence, Judge Lynn stopped down and said, wait a second, I want to talk in more detail than the prosecutor did because these facts are important to my decision, pointing out that he possessed multiple guns, that he had confronted a customer with an AR and threatened to kill him, that he had another gun loaded and a lot of ammunition at his business, that a couple of months later, when police stopped him, he had two more guns, a .45 caliber handgun and an AK-47 pistol. Those were the things that the court wanted to make sure was very, very clear in this record because those were things that were important to the court. The court didn't mention the guidelines drove her decision. Well, except that at the end of all of that, she says the court's going to sentence you to the guideline in this case. It's 120 months. Is there any mention of maximum sentence? There isn't. So wouldn't the court have said at that point, I'm going to sentence you to the maximum in this case, 120 months? In which case, maybe that would have been simply an observation as well. The court made the decision that 10 years, 120 months was sufficient but not greater than necessary. She never said she wished she had more discretion because 120 months was what she deemed sufficient but not greater than necessary. And I would again point the court to Reina Aragon, where simply saying, making the observation, this is the, by the way, this is the guideline sentence, that that's simply an observation and at no point did she ever point to the guideline sentence as being a reason, as a justification. This is why I'm giving you the sentence. I see that my time is almost out unless the court has any additional questions. Thank you, Mr. McKay. We appreciate your good art. Appreciate it. Thank you, Your Honor. All right, Mr. Page, you have some rebuttal if you wish to use it. Thank you, Your Honor. May it please the court. Two points I'd like to make. Oops, excuse me. The first is that I don't think I'm calling for magic words here. There is more than one way to express a clarity of intent, but the district court's comments do not express a clear intent to sentence to 120 months irrespective of the guidelines. Other things that the district court could have said, there's more than one way for her to express that she was committed to a sentence of 120 months. She could have said, it has to be the statutory maximum. She could have said, the statutory maximum doesn't even seem like enough to me. She could have said, or some reference to the hypothetical circumstance of an appellate reversal or a lesser guideline range. In this case, the comments of the district court don't show a clarity of intent because they would have been consistent with another severe sentence that was less than 120 months, like 87 months or 105 months. The second point I want to make is it sounds to me like the rule the government is advocating here is essentially that if a district court thoroughly explains a sentence and does not influence the sentence, then this court can infer that the guidelines didn't matter. I think that's incorrect under controlling precedent for two reasons. I take it your argument is that she would have had to have actually granted a variance of some 33 months to reach the law that is moved to. At this sentence, she would have had to go up to a variance of 33 months. Is that accurate? That's a very important part of the argument is that we don't presume that the court would have varied. It's still less than it would have varied to that extent. I think one thing that's wrong with the government's proposed rule is that in Molina-Martinez essentially says that the fact that the district court does not mention the guidelines or the influence of the guidelines doesn't mean that they didn't have an influence on the sentence. That's the rule even under plain error under Molina-Martinez, not in a case like this where we have preserved error and it's the government's high hurdle and heavy burden in order to show harmless error. The second thing that's wrong with the government's rule is that it is essentially collapsing the Abaro-Luna standard into a showing that the sentence would have been imposed for the same reasons. There's no mention of the guidelines in the reasoning for the other side of the Abaro-Luna standard, which is that there has to be something that shows that the precise sentence would have been imposed under different guidelines. There's nothing here that translates all of the open-ended factors that the court was referring into a number. The guidelines are unique in that way and that they're the only thing that take those open-ended factors and turn them into a number, and that's why they have such a presumed influence on the sentence. If the court has nothing else, I'm done. Thank you. All right. Thank you, Mr. Page, and thank you, Mr. Kaye. We appreciate you coming in to argue the case, so it will be submitted on the briefs in the oral argument and we'll get it decided as soon as we can. With that, that completes the one case we had to orally argue, and we'll just be in a short recess and we'll reconvene on Zoom in order to do the second case for today.